*In Re: K.B.*, No. 60, September Term, 2025. Opinion by Eaves, J.

**MOOTNESS DOCTRINE – EXCEPTION TO THE MOOTNESS DOCTRINE – PUBLIC INTEREST EXCEPTION**

The Supreme Court of Maryland held that Petitioner's appeal, a challenge to her removal from her grandmother's custody as a child in need of assistance ("CINA"), was moot where, prior to oral argument, the juvenile court terminated the CINA proceedings and restored custody to Petitioner's grandmother. Nevertheless, the Court held that the case presented an issue of public importance and that Petitioner was an appropriate surrogate for the class of people who could encounter the same issue in the future. The Court, therefore, exercised its discretion to address the merits.

**PROCEDURAL DUE PROCESS – RIGHT TO ATTEND AND PARTICIPATE – EXCLUSION**

As a threshold matter, the Supreme Court of Maryland clarified that Maryland Rule 11-109 is inapplicable because that Rule governs only a custodian's obligation to bring a child to a hearing and the court's authority to "excuse" noncompliance with that obligation. Where a child in a CINA proceeding is present for the hearing and their custodian has fulfilled that obligation, Rule 11-109 does not apply.

The Supreme Court held that the juvenile court violated Petitioner's right to procedural due process when it excluded her from her own CINA proceeding. The Supreme Court fashioned the following test for determining when a child party may be excluded from their own CINA proceeding. In order to exclude a child in a CINA proceeding—consistent with the principles of procedural due process and over the objection of the child's counsel—the juvenile court must conclude in its discretion after balancing relevant, individualized factors, that the child's presence would be harmful to their wellbeing and that any such harm outweighs the child's due process interests in attending the proceeding. The juvenile court must then ensure that the exclusion is no broader than necessary, i.e., that it is narrowly tailored to address the concerns that the child's presence creates. Absent requisite findings and balancing regarding the child's due process interests and welfare, a child in a CINA proceeding can be excluded—consistent with principles of procedural due process—*only* if the child is disruptive, or the child's attorney waives the child's participation. Because the juvenile court failed to make any particularized findings regarding the Petitioner, the juvenile court violated her rights to procedural due process.

Circuit Court for Worcester County
Case No. C-23-JV-23-000047
Argued: June 4, 2026

IN THE SUPREME COURT

OF MARYLAND

No. 60

September Term, 2025

_____

IN RE: K.B.

_____

Fader, C.J.,
Watts,
Booth,
Biran,
Gould,
Eaves,
Killough,

JJ.

_____

Opinion by Eaves, J.

_____

Filed: July 24, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

# I
## INTRODUCTION

In this case, we are tasked with evaluating the scope of a child's right to procedural due process, namely, the right to attend and participate in a hearing in which the child is a party. K.B., born in 2012, is the minor child at the center of this child-in-need-of-assistance ("CINA") appeal.[1] Since 2016, K.B.'s grandmother ("Grandmother") has had custody of K.B. due to the "mild-to-moderate intellectual disabilities[]" of K.B.'s mother ("Mother"). In June 2023, the Department of Social Services of Worcester County ("Department") petitioned to have K.B. adjudicated a CINA, citing reports that she had missed medical appointments and substantially fallen behind in school. Following adjudication and disposition, the Circuit Court for Worcester County, sitting as a juvenile court, found K.B. to be a CINA. Rather than remove her, the court allowed K.B. to remain in Grandmother's custody under an order of protective supervision by the Department with conditions dependent on K.B.'s care and at Grandmother's compliance with a care plan.

Over the ensuing months, the juvenile court held numerous review hearings related to K.B.'s CINA case, during which time K.B. remained in Grandmother's custody

---

[1] A CINA is a child that requires court intervention because "(1) [t]he child has been abused, has been neglected, has a developmental disability, or has a mental disorder[]" and "(2) [t]he child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs." Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 3-801(f) (2020 Repl. Vol.).

under the order of protective supervision.[2] A magistrate eventually recommended, however, that K.B. be removed from Grandmother's custody and committed to the Department for out-of-home placement. K.B. and Grandmother filed exceptions. At the subsequent de novo exceptions hearing, the juvenile court—over the objection of K.B.'s counsel—excluded K.B. from the hearing because the juvenile court did not believe that it was appropriate for K.B. to hear the testimony that was likely to occur in that hearing. The juvenile court ultimately adopted the magistrate's recommendation, removing K.B. from Grandmother's custody, and the Appellate Court of Maryland affirmed.[3]

We issued a writ of certiorari in this case[4] to determine whether the circuit court violated K.B.'s rights to procedural due process when it excluded her from the CINA hearing.[5] For the reasons discussed below, we hold that the circuit court's exclusion of K.B. was error and reverse the judgment of the Appellate Court of Maryland.

---

[2] The records associated with those hearings disclose that K.B. has a significant history of abuse and neglect. The narrow legal question presented does not require us to recite that history. Our omission of those facts is not intended to minimize the abuse and neglect K.B. has endured.

[3] *In re K.B.*, No. 765, 2025 WL 3718786, at *1 (Md. App. Ct. Dec. 23, 2025).

[4] *In re K.B.*, 493 Md. 311 (2026).

[5] We have rephrased the question presented, which was: "May a juvenile court exclude a child party from a CINA hearing only upon individualized, evidence-based findings of good cause, and not based on generalized, age-related assumptions, where the child's presence is presumed, the child wishes to attend, and counsel deems the child's participation necessary?"

2

# II
# BACKGROUND

## A.  *Juvenile Court Proceedings*

In March 2025, a magistrate conducted a contested CINA review hearing. At the outset of the hearing, the magistrate was concerned that K.B. was present in the courtroom and, thus, excluded her from the hearing without objection from any party or K.B.'s attorney. The magistrate received into evidence, among other exhibits, the Department's CINA review report and a psychological evaluation regarding Grandmother's fitness to parent, heard from several witnesses, and had an on-the-record consultation with K.B. At the conclusion of the hearing, the magistrate recommended K.B.'s removal from Grandmother's custody and commitment to the Department for out-of-home placement. K.B., through counsel, and Grandmother filed timely exceptions to the magistrate's recommendations and requested a de novo hearing.

The juvenile court held a de novo exceptions hearing the following month. K.B. was initially present in the courtroom without counsel when the proceedings began. Before any evidence was taken, the court inquired whether K.B. should remain in the courtroom for the hearing and invited the parties to state their positions. Counsel for Mother and the Department both agreed that K.B. should be excluded from the proceeding. Grandmother's counsel stated that it was their understanding that K.B.'s counsel should make the ultimate determination as to K.B.'s presence. The court agreed with Mother and the Department, and K.B. subsequently was escorted out of the

courtroom. When she arrived, counsel for K.B. opposed K.B.'s exclusion and the

following colloquy occurred:

> [K.B.'S COUNSEL]: As far as [K.B.] is concerned, [K.B.] is a party, she has a right to attend the court hearing, she wanted to attend the court hearing, and that is why she is here. I understand that this Court may have a different view about --
>
> [THE COURT]: Not just this Court. I believe that my position is supported throughout the State, that children who are the subject of custody cases and/or juvenile cases, unless it is a delinquency case, especially in a case like this that is highly contested, it is most likely not in their best interest that they be here, especially since they have counsel. And I'm assuming you will be advocating for her and also representing her best interest.
>
> [K.B.'S COUNSEL]: Respectfully, Your Honor, I practice throughout the State. And it is different when it comes to custody and when it comes to delinquency.
>
> [THE COURT]: Delinquency, of course.
>
> [K.B.'S COUNSEL]: And CINA court. In CINA court it is extremely important for not only the child's voice to be heard but [that] they be allowed to participate in the court hearing when that is their position as they are a party.
>
> [THE COURT]: I understand [counsel], and I don't mean to be disrespectful. I would say to you that I believe that her voice is [you], that is the reason for the appointment of child counsel, and that you should be extremely aware of and knowledgeable about her position and why she has the position she does.
>
> I do not believe that any Court -- I do not personally believe that any Court who should be looking out for a best interest of minors, especially children that are under the age of 15, that may have developmental delays, I do not believe that they should be present during a court hearing when there are issues of access and the reasons why each party is arguing either for or against access.
>
> I understand she had a child consult with the Magistrate, so her voice has been heard, and it's part of the court record.

So certainly you are welcome to excuse yourself at any point in time if you wish to talk to her. I believe she should be in school, especially given an ongoing failure to send case when [Grandmother] is still on probation. I can't imagine that when we balance out what's important for [K.B.] that her presence here today could not be adequately represented by you, [counsel].

[K.B.'S COUNSEL]: It's not just her position, Your Honor, it's not just her voice, but her active participation in the evidence that is received. And I understand, this is a fundamental difference that I didn't see us, you know, agreeing on, since this is your courtroom. I don't know what else to say about that.

[THE COURT]: Okay. All right. If it is your position that she should stay here and not go to school today so that you can interact with her as needed, I'll accept that. I don't think it's particularly good for her, especially given her issues with her academic performance, but I would accept that if you believe she needs to stick around so that you can talk to her and get her position on things, that's fine. I do not want her in the courtroom. I don't think it's in her best interest for her to be part of this.

And I need to piggyback onto that and note that she has been part of this process with the Magistrate in the past, so she has had the opportunity to participate as you think she needs to. Today is an exceptions hearing.

The juvenile court ruled that K.B. would remain excluded from the courtroom but permitted her to stay outside in the hallway in case counsel needed to consult with K.B. At the close of the hearing, the court held *sub curia* its decision on the merits of the exceptions.

At a May 2025 hearing, the court delivered an oral ruling overruling the exceptions and affirming the magistrate's recommendation for out-of-home placement with custody to the Department. Addressing K.B.'s exclusion from the hearing, the court acknowledged that K.B. "has attended most of her CINA review hearings and was present during the exceptions hearing on April 22[] until the Court requested her to either sit in the hall or be taken to school." Nevertheless, the court adhered to its view that "a

5

child who has been clearly educationally neglected and who continues to struggle academically should be in school when school is in session[]" and that K.B.'s attorney should have been able to represent her interests without her needing to be present.

In its accompanying written order, the court continued K.B.'s CINA status, committed her to the Department's custody for out-of-home placement, and awarded the Department limited guardianship for the purposes of health and educational services. It also ordered trauma therapy for K.B. and permitted Grandmother supervised weekly visits. K.B. and Grandmother both timely appealed.

## B.     *The Appellate Court of Maryland*

In an unreported opinion, the Appellate Court of Maryland affirmed the judgment of the juvenile court. *In re K.B.*, No. 765, 2025 WL 3718786, at *1 (Md. App. Ct. Dec. 23, 2025). Relevant to the issue before us, the Appellate Court held that the juvenile court did not abuse its discretion in excluding K.B. from the courtroom during the exceptions hearing. *Id.* at *18. The court drew on our decision in *In re Maria P.*, 393 Md. 661, 670–71 (2006), in which we held that a juvenile court abused its discretion by excluding a mother from a CINA hearing without any indication that it had considered the mother's procedural due process rights. *Id.* at *17–18. Distinguishing the instant matter from *In re Maria P.*, the Appellate Court concluded that the juvenile court here "considered K.B.'s due process rights and expressed the factual basis for its decision to exclude her from the hearing." *Id.* at *18. The Appellate Court reasoned that the juvenile court's recognition of the sensitive nature of the evidence, the contested posture of the hearing, and K.B.'s young age were all legitimate concerns that supported the lower court's decision to

6

exclude her. *Id.*

### III
### STANDARD OF REVIEW

In most cases, whether a party was afforded the process guaranteed by the Due Process Clause of the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights, i.e., whether an individual received notice and an opportunity to be heard, is a question of law that this Court reviews de novo. *Clarke v. Gibson*, 492 Md. 557, 576 (2025) ("Determinations as to whether an individual's right to procedural due process was violated are made without deference to a lower court's determination." (citing *In re Special Investigation Misc. 1064*, 478 Md. 528, 545–46 (2021))). On such questions, we conduct our "own independent appraisal by reviewing the law and applying it to the facts of the case." *Id.* at 577 (quoting *Piper v. Layman*, 125 Md. App. 745, 754 (1999)).

As discussed more fully below, due process also guarantees an individual's right to attend and participate in their own hearing; although, that right is not without limits. A trial court's decision to exclude a party from their own hearing is generally a matter committed to the court's discretion and, as such, is reviewed on appeal for abuse of that discretion. *See In re Maria P.*, 393 Md. at 677. While that standard governs the trial court's ultimate exercise of judgment, it does not insulate from de novo review the antecedent question of whether the court applied the correct legal standard. *See Trimble v. State*, 491 Md. 378, 405 (2025) ("[T]he circuit court's discretion is tempered by the requirement that the court apply the 'correct legal standards[.]'" (second alteration in original) (quoting *Sexton v. State*, 258 Md. App. 525, 541 (2023))).

7

# IV
# ANALYSIS

The Department preliminarily argues that this case is moot because the juvenile court entered an order on May 5, 2026, adopting the recommendations of a magistrate that the CINA proceedings be terminated with a final award of custody to Grandmother.[6] As to the merits, the Department argues that the juvenile court's decision to exclude K.B. from the relevant proceedings "was based on the unique circumstances of K.B. and her family[,]" which did not constitute an abuse of discretion. Even if the juvenile court erred in excluding K.B. from the proceeding in question, the Department argues that K.B. has not shown how that exclusion prejudiced her, such that the exclusion is harmless.

While conceding that her appeal is moot, K.B. argues that we should nevertheless address the merits because her case falls into two of the exceptions to the mootness doctrine—capable of repetition yet evading review and the public interest exception. On the merits, K.B. argues that her absence can be justified under Maryland Rule 11-109 only if one of two grounds is satisfied: her presence was waived by her attorney or the juvenile court finds that the exclusion is justified by good cause. Because, in K.B.'s view, neither ground is satisfied, her exclusion violated her due process rights, requiring

---

[6] The Department requests that we take judicial notice of the juvenile court's May 5, 2026, order attached as an appendix to its brief. We elect to do so. *See Lerner v. Lerner Corp.*, 132 Md. App. 32, 41 (2000) ("[T]he courts, trial and appellate, take notice of their own respective records in the present litigation, both as to the matters occurring in the immediate trial, and in previous trials or hearings." (quoting McCormick on Evidence § 330, at 766 (2d ed. 1972))); *see also* Committee Note to Md. R. 8-414 (noting that the general rule that an appellate court "ordinarily may not order an addition to the record of new facts, documents, information, or evidence that had not been submitted to the lower court[]" does "not preclude the appellate court from considering facts of which the appellate court may take judicial notice, including facts bearing on mootness[]").

8

reversal. K.B. also argues that her exclusion resulted in prejudice because she was unable to meaningfully assist her attorney during the exceptions hearing.

We hold that K.B.'s appeal is moot because it no longer presents a live case or controversy. Nevertheless, because it presents an issue of public importance for an identifiable group for whom K.B. is an appropriate surrogate, we will address the merits. Evaluating the record in this case, we hold that the juvenile court violated K.B.'s rights to procedural due process when it excluded her from the hearing and that prejudice, in this case, is presumed. We, therefore, reverse the judgment of the Appellate Court.

## A.     *The Appeal Is Moot But Presents an Issue of Public Importance*

Due to the May 5 order terminating the CINA proceedings and awarding custody to Grandmother, the Department argues that "there is no longer an existing controversy between the parties or any remedy th[is] Court can provide[,]" as K.B. "has received the outcome she desires[.]" It further argues that this is not a case of public concern, qualifying as an exception to the mootness doctrine, because the Appellate Court's opinion in this case is unreported, did not create a bright-line rule, and recognized the correct law and standard of review to be applied in cases presenting the issue of child presence. Furthermore, the Department argues that K.B. has failed to "reference any other Maryland appellate decision or any general statewide juvenile court practice of categorical exclusion."

K.B. counters that, although technically moot, her case is one that "will continue to recur but evade review." She argues that her case "fall[s] squarely within th[is] . . . exception[,]" because CINA cases, by their very nature, "feature regular hearings and

9

frequently updated court orders." Because of the "statutory scheme's emphasis on timely resolution of cases, and the frequency of review hearings mandated by statute, there is a particularly high likelihood that due process violations in CINA hearings like [hers] will continue to evade review."

We agree that this case is moot, but we nevertheless hold that it is one that presents an important public issue and exercise our discretion to address the merits.[7]

---

[7] We disagree that K.B.'s case qualifies for the "capable of repetition yet evading review" exception. "This exception applies when (1) the challenged action was too short in its duration to be fully litigated prior to its cessation or expiration; and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Wilson v. Tanglewood Venture, LP*, 492 Md. 590, 600 (2025) (quoting *Powell v. Md. Dep't of Health*, 455 Md. 520, 541 (2017)). We agree that her case satisfies the first prong. *See In re Justin D.*, 357 Md. 431, 444 (2000) (noting that CINA orders "that are appealed will almost always be replaced by subsequent orders before this Court will have the opportunity to review them[]"); *In re M.C.*, 245 Md. App. 215, 225 (2020) (noting that regular operation of the CINA statutory scheme "will largely preclude appeals from juvenile court orders . . . in the normal course[]"). But we cannot say that there is a reasonable expectation that K.B. will again fall under the jurisdiction of the juvenile court and that she will be placed outside of Grandmother's custody. Such an assertion would be, at best, speculative. *See Wilson*, 492 Md. at 600 (holding that tenants' appeal was moot and did not qualify for the "capable of repetition yet evading review" exception because "[t]he record offer[ed] no reasonable basis to expect that [the t]enants would be subject to the same action again, particularly from this [l]andlord, with whom they have no current legal relationship[]"); *see also Murphy v. Hunt*, 455 U.S. 478, 482 (1982) ("The Court has never held that a mere physical or theoretical possibility was sufficient to satisfy the ['capable of repetition yet evading review' exception]. If this were true, virtually any matter of short duration would be reviewable. Rather, we have said that there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam))); *Coastal Env't Rts. Found. v. Naples Rest. Grp., LLC*, 158 F.4th 1052, 1059 (9th Cir. 2025) ("[M]ootness also requires asking whether the possibility of the defendant resuming the harmful conduct was not too speculative to overcome mootness . . . ." (citation modified)); *Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 195 (1st Cir. 2022) ("Notably, th[e] requirement [that there be a reasonable expectation of certain conduct repeating] cannot rest on the possibility that other parties may subsequently bring a similar claim[.] The reasonable expectation of

"[A] case is moot if no controversy exists between the parties or when the court can no longer fashion an effective remedy." *Wilson v. Tanglewood Venture, LP*, 492 Md. 590, 597 (2025) (alteration in original) (quoting *D.L. v. Sheppard Pratt Health Sys., Inc.*, 465 Md. 339, 351–52 (2019)). "The test is whether 'past facts and occurrences have produced a situation in which, without any future action, any judgment or decree the court might enter would be without effect.'" *Id.* (quoting *Cane v. EZ Rentals*, 450 Md. 597, 611 (2016)). The parties agree that this case is moot, and we concur. Throughout the CINA proceedings, K.B.'s desired outcome was termination of her status as a CINA and reunification with Grandmother. That outcome was denied to her with the juvenile court's May 13, 2025, order, which (1) continued K.B.'s CINA status, (2) placed K.B. in the Department's custody for the purpose of determining out-of-home placement, (3) granted the Department limited guardianship, and (4) granted weekly visitation to Grandmother. But K.B.'s desired relief was subsequently granted to her when the juvenile court terminated the CINA proceedings and restored custody to Grandmother via its May 5, 2026, order. As of that date, K.B. was granted all the relief she sought, and any order or judgment on the matter by this Court would be without effect. *See id.* Thus, there exists no live case or controversy between the parties, and this appeal is moot.

Unlike in the federal court system, however, "there is no constitutional bar to this Court expressing its views on a moot issue[.]" *Id.* at 598 (quoting *Powell v. Md. Dep't of Health*, 455 Md. 520, 539–40 (2017)). Rather, we have discretion to dismiss appeals that are moot. *See* Md. R. 8-602(c)(8). Although we do not routinely address moot issues, we

repetition must be specific to [the plaintiffs]." (citation modified)).

11

recognize a variety of exceptions that, if present, counsel in favor of addressing the merits of a moot appeal. *Wilson*, 492 Md. at 598 (citation omitted). One such exception is where a case presents an issue of public importance, i.e., "when the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest." *Id.* at 600 (citation modified). If the issue is of public importance "and affects an identifiable group for whom the complaining party is an appropriate surrogate[,]" *State v. Crawford*, 239 Md. App. 84, 113 (2018) (citation omitted), then we may exercise our discretion to review an otherwise moot appeal.

K.B.'s case presents an issue of public importance, and she is an appropriate surrogate for the class of people who may encounter this issue in the future. The issue presented concerns the right of a minor child to attend and partake in her own CINA proceeding. CINA proceedings can have monumental effects on a child, most notably potential alteration of the child's care, custody, and living situation. Ensuring that the juvenile courts appropriately adhere to the statutes and rules governing a child's participation in a CINA proceeding, thus, presents an issue of public importance. And K.B., as a child in a CINA proceeding, is an appropriate surrogate to represent the class of children who also are CINAs and have just as much to gain by ensuring that the juvenile court in their cases also appropriately adheres to those same statutes and rules. What is more, because we believe, as discussed more fully below, that the parties and the juvenile court misunderstood the application of Rule 11-109, we find it important to properly discuss that Rule's application in future cases.

The Department's arguments to the contrary are unavailing. First, citing *In re*

*Maria P.*, the Department argues that we have already "recognized that the right to personally participate in a juvenile court proceeding depends on the circumstances of the case at hand." But in *In re Maria P.*, we held that a juvenile court could not—absent any evidence or making any findings—exclude a parent from a CINA proceeding on the ground that the child would not testify truthfully in the parent's presence. 393 Md. at 666. We did not otherwise address the right of the child to attend their own hearing.

Second, simply because the Appellate Court did not, in the Department's view, apply a categorical rule of exclusion does not divest the underlying issue of its public importance. Recognizing the governing statutes and rules in a given case does not necessarily equate with the correct application of those controlling authorities.

Third, while a reported opinion from the Appellate Court certainly has a greater impact on society, given its precedential force, the mere fact that an opinion is unreported does not necessarily mean that any issue addressed therein is not a matter of public importance, as unreported opinions may be cited as persuasive authority. *See* Md. R. 1-104(a)(2)(B).

Fourth, there are no designated criteria that a party must satisfy when claiming the "public importance" exception to mootness. Thus, K.B.'s lack of reference in her petition for a writ of certiorari to other Maryland appellate decisions utilizing a categorical exclusion is not a bar to finding that her case presents an issue of public importance. That an issue has not been addressed by the courts before does not make it any less a matter of public importance—just as prior consideration would not automatically make it one.

Therefore, we exercise our discretion to address the merits of this otherwise moot

13

appeal as an issue of public importance.

## B. *The Juvenile Court Erred in Excluding K.B. from the Exceptions Hearing*

We first provide an overview of the relevant statutes and rules applicable to CINA proceedings, especially Maryland Rule 11-109—the legal authority that the parties believe lies at the core of their dispute, concluding that Rule 11-109 is, in fact, inapplicable to this case. We then discuss the applicable principles of procedural due process. We then apply those principles, concluding that the juvenile court violated K.B.'s rights to procedural due process when it excluded her.

### 1. Relevant statutes and rules governing CINA proceedings

There are various statutes and rules that this appeal implicates. Thus, we first recount our principles of statutory interpretation:

> We start with the cardinal rule of statutory interpretation—to ascertain and effectuate the General Assembly's purpose and intent when it enacted the statute. We assume that the General Assembly's intent is expressed in the statutory language and therefore begin our analysis with the plain language of the statute. We begin this task by looking to the normal, plain meaning of the text, ensuring that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory.
>
> And while we focus on the statute's plain text, we avoid reading statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Instead, we analyze the statutory scheme as a whole considering the purpose, aim, or policy of the enacting body. If we are satisfied that the statute's plain language is unambiguous and clearly communicates the General Assembly's intent, then our inquiry ends, and we apply the statute as written, without resort to other rules of construction.

*Caruso Builder Belle Oak, LLC v. Sullivan*, 489 Md. 346, 365–66 (2025) (citation modified). These same principles apply when interpreting the Maryland Rules. *Bratt v.*

*State*, 468 Md. 481, 494 (2020) ("We construe the meaning of Maryland Rules using the well-settled principles of statutory construction and interpretation." (citing *Bailey v. State*, 464 Md. 685, 696 (2019))).

Maryland Rule 11-108(d)(1) states that the determination of exclusion from a CINA proceeding is governed by § 3-810(b) of the Courts and Judicial Proceedings Article ("CJP") of the Annotated Code of Maryland (2020 Repl. Vol.). In relevant part, that statute states: "In any proceeding in which a child is alleged to be in need of assistance or in any voluntary placement hearing, the court may *exclude the general public* from a hearing *and admit only those persons having a direct interest in the proceeding and their representatives*." CJP § 3-810(b)(1) (emphases added). That statute vests the juvenile court with discretion to exclude only members of the "general public" and requires the court to admit those "having a direct interest in the proceeding[.]" *Id.* The plain language of CJP § 3-810(b)(1), thus, contemplates that CINA proceedings—as a baseline—will include those who have a direct stake in the proceedings and counsel for those respective individuals. What is noticeably absent—in any statute or rule—is the authority for the juvenile court to exclude any individual who has a direct interest in the CINA proceeding. On this point, the parties appear to misunderstand Maryland Rule 11-109. Thus, we pause to clarify how that Rule fits into the procedural operation of CINA proceedings.

The parties devote considerable time debating whether the juvenile court complied with Maryland Rule 11-109. That Rule states: "Unless the child's presence is excused by the court for good cause, the child's custodian shall bring the child to all hearings under

the Rules in this Title. An attorney for the child may waive the child's presence in any proceeding other than" certain proceedings not relevant here. Md. R. 11-109. In K.B.'s view, because counsel did not waive her presence, the juvenile court could not have excluded her from the courtroom absent good cause, which, in K.B.'s view, the juvenile court did not establish. Conversely, the Department argues that the juvenile court "has the discretion to exclude a child from [a] hearing for good cause[,]" and that the juvenile court, "acting within its broad discretion, . . . excluded K.B. from the courtroom for good cause when it properly considered K.B.'s unique circumstances and best interest based on the record before it." Contrary to the parties' arguments, Rule 11-109 is not applicable to this case.

Rule 11-109 has nothing to do with *exclusion*. Rather, it operates on the assumption that a child who is the subject of a CINA proceeding will be brought to that hearing unless that child's presence is "*excused*" either because their attorney has waived the child's presence or because a juvenile court made a good-cause determination justifying the excusal. Md. R. 11-109 (emphasis added). One is generally excused from an obligation. *See Excuse*, Merriam-Webster's Collegiate Dictionary (11th ed. 2020) (noting that "excuse" means, among other things, "to grant exemption or release to"); *see also Engage Armament LLC v. Montgomery County*, 494 Md. 1, 35 (2026) ("When statutory terms are undefined, we often look to dictionary definitions as a starting point[] . . . ." (quoting *Westminster Mgmt., LLC v. Smith*, 486 Md. 616, 644 (2024))). And the party with the obligation is usually the one that seeks to have their compliance excused.

For example, a student who misses class can have that absence *excused* if they

bring proper documentation. The onus is on the student to attend all scheduled classes, and that obligation can be excused if the student asks for that excusal and meets the established criteria for excusal. And excusal carries with it alleviation from adverse consequences that normally flow absent the excusal. An unexcused absence from class typically would count towards a student's total accumulation of missed days during an academic calendar. Conversely, if a student attends class but otherwise misbehaves, the student might be dismissed or expelled from the classroom, i.e., excluded from the classroom, but we typically would not say that the student was excused from class due to their misbehavior. Given that excusal exempts adverse consequences, the child would be unjustly rewarded for their bad behavior.

Put in context here, the relevant obligation is that the custodian of the child who is the subject of the CINA proceeding shall bring the child to that hearing. The plain language confirms as such: Unless one of the articulated exceptions apply, "the child's custodian *shall bring* the child to all hearings under the Rules in this Title." Md. R. 11-109 (emphasis added). The custodian's noncompliance with that requirement is what a juvenile court can excuse upon a finding of good cause, absent an attorney's waiver of the child's presence.

The parties' arguments appear to adopt an interpretation of Rule 11-109 that permits a juvenile court to *sua sponte* remove an already-present child from a CINA proceeding. If that indeed is their belief, it is incorrect. That interpretation is contrary to the Rule's plain, unambiguous text. The facts of this case illustrate the point. K.B. was present at the hearing just prior to her dismissal from the courtroom, meaning that

17

Grandmother had fulfilled her obligation under Rule 11-109 to bring K.B. to the hearing. With that obligation fulfilled, there was simply no pending obligation from which Grandmother could have sought excusal, thereby requiring the juvenile court to make a good-cause determination. In other words, based on Rule 11-109's plain text alone, if a child in a CINA proceeding is present for a hearing, Rule 11-109 simply does not apply.

Furthermore, rules and statutes that are a part of the same scheme must be read together and harmonized. *See Caruso Builder Belle Oak, LLC*, 489 Md. at 365. We must give effect to the fact that a juvenile court has the authority to *exclude* general members of the public from a CINA proceeding while having the authority to *excuse* a custodian's requirement to bring the child in that CINA proceeding to the hearings. *Contrast* CJP § 3-810(b)(1) *with* Md. R. 11-109. Those two verbs are not synonymous. If we were to adopt the parties' position that Rule 11-109 authorizes the juvenile court to exclude the child in a CINA proceeding, who is currently present and where the child's attorney has not waived the child's presence, then we eliminate the distinction between the verbs "exclude" and "excuse" and otherwise grant juvenile courts the authority via rule that the General Assembly has not bestowed upon them.

Lastly, we note some important statutory history that touches upon this area. In the most recent legislative session, the General Assembly introduced a bill that ultimately did not pass but would have created a new section: CJP § 3-831. *See* H.B. 1290, 449th Gen. Assemb., Reg. Sess. (Md. 2026) ("HB 1290"). As originally proposed, § 1 of HB 1290 proposed to create CJP § 3-831, subsection (a) of which would have statutorily recognized that children have a right to attend their own CINA proceeding. As originally

18

proposed, subsection (b) would have given a juvenile court the authority to exclude a child from a CINA proceeding if either the child's attorney or the court concluded that it was not in the child's best interest to attend. The latter avenue would have required the court to make specific, on-the-record findings to support exclusion. Regardless of whether exclusion came at the attorney's or court's behest, subsection (c) would have required the court to consider less-restrictive alternatives before excluding the child. A later amendment to HB 1290 struck almost all of subsections (b) and (c), leaving language that would have permitted exclusion only if the child's attorney waived the child's presence.

The proposal of HB 1290 is, in and of itself, telling, as it shows that its proponents did not share K.B.'s interpretation of Rule 11-109. As noted, Rule 11-109 grants courts the authority to "excuse" a third party's obligation to bring a child to the child's CINA proceeding, while HB 1290 would have granted courts the authority to "exclude" a child from the CINA proceeding itself. For the reasons already discussed, "excuse" and "exclude" are not synonymous, and the recipients of the court's discretion in Rule 11-109 and HB 1290 are different. HB 1290, thus, reinforces our interpretation of Rule 11-109 and determination that it has no application in this case.

With that clarification, we turn to address the pertinent principles of procedural due process.

### 2. Principles of procedural due process

When we think of procedural due process, we typically think of an individual's right to receive notice and an opportunity to be heard. *See, e.g.*, *Clarke*, 492 Md. at 581

("At its core, procedural due process ensures that individuals are not subject to arbitrary governmental deprivation of their liberty and property interests by requiring that litigants receive notice and an opportunity to be heard." (citation modified)). But procedural due process also recognizes that "a party to civil litigation has a right to be present for and to participate in the trial of [their] case." *In re Maria P.*, 393 Md. at 672 (quoting *Green v. N. Arundel Hosp. Ass'n*, 366 Md. 597, 618 (2001)). The right to be present and participate has no less than four sources of origin: (1) the common law, (2) the Fourteenth Amendment to the United States Constitution, (3) Article 19 of the Maryland Declaration of Rights, and (4) Article 24 of the Maryland Declaration of Rights. *Green*, 366 Md. at 618.

By statute, the child who is the subject of a CINA proceeding is a party to that proceeding. CJP § 3-801(v)(1)(i) (noting that "[p]arty" means, among other things, "[a] child who is the subject of a [CINA] petition[]"). And CINA proceedings are "civil in nature." *In re Maria P.*, 393 Md. at 672 (citations omitted). Thus, children in CINA proceedings have procedural due process rights to attend and participate in their own CINA hearing. *See In re Najasha B.*, 409 Md. 20, 22 (2009) (recognizing "the rights of [a] child as a party to a CINA" proceeding).

But such rights are not absolute, *Green*, 366 Md. at 618, and two of our cases help illustrate the point: *In re Maria P.* and *Green*. We turn to a deeper discussion of those cases.

In *In re Maria P.*, a mother was excluded from the portions of her child's CINA proceeding when the child was expected to testify about issues of rape because there was

a fear that the child might not testify truthfully in the mother's presence. 393 Md. at 664–65, 676. We reversed, stating:

> There is no indication on the record that the hearing judge considered [the mother's] due process rights. No testimony was placed on the record, and no inquiries were made of the Department as to the specific reasons for [the mother's] exclusion during [the minor's] testimony. In this situation, we are unable to discern the judge's exercise of discretion if he or she does not state, or there does not exist, on the record, the factual basis for his or her decision.

*Id.* at 676–77. That exercise of judicial discretion in that case was tied to, however, former Maryland Rule 11-110(b), which, at the time, permitted a juvenile court to hold a hearing, among other things, "out of the presence of all persons except those whose presence is necessary or desirable." *Id.* at 671 (emphasis omitted). Given that the mother had a constitutional right in her status as a parent, we noted that the exercise of that discretion was "not unlimited and must be exercised in accord with [the] purposes for which it was given and within applicable constitutional limitations." *Id.* at 677 (citing *Balt. Sun Co. v. State*, 340 Md. 437, 456–57 (1995)). We concluded that the juvenile court had not exercised its discretion in accordance with former Rule 11-110(b),[8] and that the failure to exercise that discretion was, in and of itself, an abuse. *See id.* at 679 ("We hold that the juvenile court abused its discretion in excluding [the mother] from the proceedings without making any specific factual finding as to the propriety of her

---

[8] What was Rule 11-110 is now Rule 11-108, and subsection (c) currently states: "A hearing may be conducted in open court, in chambers, remotely in conformance with the procedures and requirements in the Rules in Title 21, or elsewhere where appropriate facilities are available." *See* Meeting Minutes, Standing Committee on Rules of Practice and Procedure, at 62 (Apr. 16, 2021) (noting that "[p]roposed Rule 11-108 is derived from current Rule 11-110" and that the new subsection (c) "is derived from current Rule 11-110 b").

exclusion.").

At the time *In re Maria P.* was decided, a court could, in its discretion under former Rule 11-110(b)—but in accordance with principles of due process—exclude a party to a CINA proceeding. But because the record lacked any indication that discretion had been exercised before the mother was excluded, we had no occasion to discuss what sort of overarching rules apply to a party's exclusion and what sort of balancing would be appropriate, assuming that balancing would have been appropriate in that case. Thus, *In re Maria P.* does not fully answer the question before us. We did, however, in an earlier case, discuss when exclusion for a narrow category of parties would be permissible.

In *Green*, a medical malpractice case was bifurcated into phases for liability and damages. 366 Md. at 601–02. There, the plaintiff was a minor who, at the time of trial, was found by the trial court to be unable to communicate in any fashion with counsel or understand or comprehend any part of trial. *Id.* at 614. Given that the trial was bifurcated, the circuit court found that there would be no purpose in having the minor attend other than to prejudice the jury. *Id.* On appeal, the plaintiff, through counsel, argued that the circuit court violated his due process rights, but we affirmed the circuit court. *Id.* at 602, 615. In doing so, we stated:

> Our holding is a narrow one. In the liability phase of a bifurcated trial, the court has discretion to exclude a plaintiff where, after a hearing and an opportunity to observe the plaintiff, either in person or by other reliable means, the court determines, on the record, that: (1) the plaintiff is severely injured; (2) the plaintiff attributes those injuries to the conduct of the defendant(s); (3) there is a substantial prospect that the plaintiff's presence in the courtroom may cause the jury to side with the plaintiff out of emotional sympathy rather than on the evidence; (4) the plaintiff is unable to communicate or participate in the trial in any meaningful way; *and* (5)

22

the plaintiff would be unable even to comprehend the proceeding. When all of those circumstances exist, as they did here, the plaintiff's presence *is not truly an exercise of his/her right of presence, for the plaintiff is incapable of making a conscious decision in that regard*. His presence is rather as an exhibit—a piece of evidence—that is both irrelevant and prejudicial, and thus invokes the balancing process enunciated in Maryland Rule 5–403. There was no abuse of discretion here.

*Id.* at 626–27 (second emphasis added).

In *Green*, we recognized that a party's due process right to attend trial is not absolute. In that case, we weighed the potential for sympathy to improperly sway the jury against the due process interests served by the party's presence in the courtroom, which we concluded were limited at best, and determined that excluding the party did not violate their due process rights. Here, the child party's due process interests and the ground for potential exclusion are substantially different from those in *Green*.

As to the interests, at least when a child party is old enough to understand what is happening in courtroom proceedings to some degree, the child can both appreciate what is occurring in the courtroom in a proceeding that has significant implications for their rights and wellbeing, and potentially aid their attorney during the hearing. *See Green*, 366 Md. at 626. Unlike the injured plaintiff in *Green* who was incapable of understanding the proceedings, participating in the proceedings, or providing assistance of any kind to counsel, many child parties to CINA proceedings are fully capable of doing all three, even if not at the same level as an adult party.

With respect to the ground for exclusion, in *Green*, it was potential prejudice before a jury. Here, the interest at issue is the child's wellbeing. CINA proceedings are ultimately and fundamentally about the wellbeing of the children who are made parties to

them. One of the purposes of the CINA statute is to "provide for the care, protection, safety, and mental and physical development of any child coming within the provisions of th[e] subtitle." CJP § 3-802(a)(1). The court is required to exercise its authority, as described in § 3-802(c)(1),[9] in a manner "to protect and advance a child's best interest." *Id.* § 3-802(c)(2). Recognizing the unique nature of these proceedings, the statute provides that judges and magistrates assigned to these cases should have, among other things, "special experience or training in juvenile cases and the problems of children likely to come before the court." *Id.* §§ 3-806(b)(3), 3-807(a)(2). Unlike with respect to an adult party to any proceeding, the juvenile court in a CINA proceeding has a duty to act in the child's best interest. *See In re Najasha B.*, 409 Md. at 34 ("The juvenile court, 'acting under the State's *parens patriae* authority, is in the unique position to marshal the applicable facts, assess the situation, and determine the correct means of fulfilling a child's best interests.'" (quoting *In re Mark M.*, 365 Md. 687, 707 (2001))). That duty applies throughout a proceeding, not only at the end.

A child party to a CINA proceeding, at least one who is capable of understanding what is occurring in a courtroom proceeding to some extent, has due process interests that are entitled to protection. Accordingly, the default status at every proceeding must be that

---

[9] CJP § 3-802(c)(1) states:

In all judicial proceedings conducted in accordance with this subtitle or § 5-326 of the Family Law Article, the court may direct the local department to provide services to a child, the child's family, or the child's caregiver to the extent that the local government is authorized under State law.

the child is entitled to attend the proceeding if they desire to do so.[10] Consistent with the court's responsibility to protect the child's best interests, however, a court may exclude a child party from some or all of a CINA proceeding if the court concludes that the child's presence would be harmful to their wellbeing and that any such harm outweighs the child's due process interests. To afford proper respect to the child's due process rights, any such determination must be individual to that child's circumstances, not based on generalized views about children generally. And any exclusion must be narrowly tailored to the identified harm—i.e., no broader than necessary to protect the child party's wellbeing—and must be supported by facts identified on the record.

Although every proceeding is different, a non-exhaustive list of potential factors a court might consider in determining whether exclusion is appropriate might include: (1) the child's ability to comprehend what will occur in the proceedings; (2) whether the child may be in a position to assist their attorney;[11] (3) the child's age; (4) the nature and extent of the allegations or circumstances undergirding the CINA proceeding; (5) the nature and extent of the child's relationship with other parties to the CINA proceeding, including the child's current placement; (6) the nature of the information of concern and

---

[10] As discussed above, it is, of course, permissible for a child party's attorney to waive their presence pursuant to Rule 11-109.

[11] In the CINA context, like with other civil cases where a party's injuries might prevent either of those functions, it will be a case-by-case determination whether a given child can comprehend the proceeding and assist counsel. All children's development and cognitive abilities do not proceed along the same linear path, so we decline to announce a definitive age above or below which the child can or cannot comprehend a proceeding and assist counsel. Any finding regarding whether a child can comprehend the proceeding and assist counsel must be supported by a preponderance of the evidence.

whether the child has previously been exposed to it or similar information; (7) any documented reaction the child has had to the disclosure of the information at issue or information of a similar nature; (8) the ability of the parties to present evidence of concern in a manner that will lessen any potential harm; and (9) the child's medical history, including any information related to their mental health and wellbeing. Any finding regarding whether a child's presence during a CINA proceeding will be harmful to the child must be supported by a preponderance of the evidence.

With all that in mind, the test is as follows: In order to exclude a child in a CINA proceeding—consistent with the principles of procedural due process and over the objection of the child's counsel—the juvenile court must conclude in its discretion, after balancing relevant, individualized factors, that the child's presence would be harmful to their wellbeing and that any such harm outweighs the child's due process interests in attending the proceeding.[12] The juvenile court must then ensure that the exclusion is no broader than necessary, i.e., that it is narrowly tailored to address the concerns that the child's presence creates.

Absent requisite findings and balancing regarding the child's due process interests and welfare, a child in a CINA proceeding can be excluded—consistent with principles of procedural due process—*only* if the child is disruptive, or the child's attorney waives the

---

[12] Typically, the parties and the court work out these matters without the need for a formal finding by the trial judge. This test provides guidance where agreement cannot be reached.

child's participation.[13] If the child party is excluded without appropriate consideration of their due process rights, then prejudice to the child is presumed, and procedural due process requires a remand for a new proceeding. *See Safeway Stores, Inc. v. Watson*, 317 Md. 178, 184 (1989) ("[I]t is appropriate to presume prejudice from the wrongful exclusion of a party, or its representative, from a trial."); *In re Maria P.*, 393 Md. at 675 ("Notably, there is no requirement that actual prejudice be shown before denial of due process can be established." (citing *Town of Somerset v. Montgomery Cnty. Bd. of Appeals*, 245 Md. 52, 66 (1966))); *cf. Town of Somerset*, 245 Md. at 66 (holding that prejudice is presumed when the right to cross examine is denied and that calling the same witness as a hostile witness is not a sufficient alternative because cross examination is "often as unexpected as it is revealing[,]" resulting in a violation of due process).

A few words on prejudice. As we noted in *Safeway*, we presume prejudice when a party is inappropriately excluded from a jury trial because "a party is entitled to be present to have a firsthand view of the proceedings for purposes of evaluating the constantly changing prospects or exigencies for settlement, and to participate in tactical decisions that must be made, sometimes quickly, in the course of a trial." 317 Md. at 184. We also noted that Safeway's counsel was "deprived of the presence at his side of the

---

[13] Waiver of the child's participation should occur only if the child has considered judgment and communicates a desire not to be present or the attorney, in accordance with their professional obligations to the child, concludes that it is in the child's best interest not to be present. *See* App'x 19-C to the Md. Att'ys' Rs. of Pro. Conduct, Guideline B1. Considered judgment is the ability for the child "to express a reasoned choice about issues that are relevant to the particular purpose for which the attorney is representing the child." *Id.*

principal investigator in the case."[14] *Id.* Although not entirely analogous, especially with respect to assessing settlement prospects, the interest of a child party to a CINA proceeding are similar. Prejudice stems from the denial of the child party's due process rights. We need not inquire as to whether the denial of those rights resulted in additional prejudice.

Moreover, a CINA proceeding revolves entirely around the wellbeing of a particular child and can determine whether custody of the child will change. Thus, there is a baseline assumption that a child attends their CINA proceeding to assist counsel. For that reason, the child's presence is invaluable to their attorney. The child can, in real-time, alert counsel to factual inaccuracies in others' testimony, provide missing context to their counsel, and otherwise provide immediate input on an array of matters. Additionally, the child can observe in real time other witnesses' demeanor and presence on the witness stand, which, in some cases, can prove useful on cross-examination.

For those reasons, we hold that, when a child is present at a CINA hearing, and the child's attorney expresses a desire for the child to be present for the hearing, the juvenile court errs in excluding the child if inconsistent with our above-articulated test, and we

---

[14] *Safeway* was a case decided under former Maryland Rule 2-513 (now Rule 5-615(b)(2)), which, at the time, stated: "A party which is a corporation or association, with the approval of the court, may designate a representative to remain in the courtroom even though such representative may be a witness." 317 Md. at 182. It matters not that the circuit court in *Safeway* erred in a determination under former Rule 2-513, the effect of that denial, as we noted, was to completely exclude a party from its own proceeding.

presume prejudice from that exclusion.[15]

### 3. Application of procedural due process principles to this case

Applying the aforementioned principles to this case, we conclude that the juvenile

---

[15] We recognize that, in *Green*, we discussed another case, *Gorman v. Sabo*, 210 Md. 155 (1956), which contains language that, taken out of context, would appear at odds with our decision today. We, thus, address *Gorman* to dispel any potential confusion. In *Gorman*, the Sabos sued the Gormans for private nuisance and successfully obtained a judgment against them. 210 Md. at 158. On appeal in this Court, the Gormans alleged, among other errors, that the circuit court had erred in denying their request for a continuance due to an alleged sickness that came over Mrs. Gorman on the afternoon of the first day of trial. *Id.* at 158, 166. In affirming the circuit court's decision not to grant a continuance, we stated:

> It is not claimed in the brief, nor was it at the argument, that the appellants were hurt in fact by the failure of the court to allow a continuance of the case. It is not even claimed that Mrs. Gorman had planned to take the stand or that she would have been a helpful or persuasive witness. It is not said that she would testify as to any fact that was not brought out in the trial, or that she could have aided in bringing out any fact not brought out either on direct or cross examination of any witness. *No actual prejudice was claimed, much less shown.* The right of a party to a cause to be present throughout the trial is not an absolute right in a civil case and in the discretion of the court, *with due regard to the circumstances as to prejudice*, the case may be tried or finished when a party, including a defendant, is absent.

*Id.* at 167 (emphases added) (citations omitted). Although we made a fleeting reference to an individual's right to attend their own civil trial, the relevant issue in *Gorman* clearly concerned the propriety of the circuit court's decision not to grant a continuance. And, in determining whether to grant a continuance, courts typically assess any potential prejudice that would befall a party. *See Touzeau v. Deffinbaugh*, 394 Md. 654, 669–70 (2006) (noting that a court abuses its discretion in denying a request for continuance where "counsel was taken by surprise by an unforeseen event at trial[]" where the counsel "acted diligently to prepare for trial[]" (citation omitted)); *Markey v. Wolf*, 92 Md. App. 137, 178 (1992) (noting that, even if a proper request for a continuance were made, it was not an abuse to deny because, among other things, "th[e] serious prejudice to appellees [that] might have resulted"). *Gorman* did not conduct any sort of constitutional analysis for an alleged deprivation of procedural due process and instead presented a continuance issue. Thus, we are loath to read *Gorman* as standing for the proposition that a showing of prejudice always is required in this context.

29

court erred when it excluded K.B. The juvenile court did not make an individualized determination concerning whether attending the hearing or any portion of it would be contrary to K.B.'s welfare, nor did the juvenile court balance any such determination against the weight of K.B.'s due process rights. The juvenile court also did not assess whether a lesser option than complete exclusion would protect its concern for K.B.'s welfare. The juvenile court articulated a general belief that any child "under the age of 15[] . . . should [not] be present during a court hearing when there are issues of access and the reasons why each party is arguing either for or against access." K.B.'s counsel confirmed that K.B. "wanted to attend the court hearing[,]" and counsel further expressed her belief that K.B.'s "participation [with] the evidence that is received[]" was necessary. In the absence of any evidence to the contrary, we can conclude that K.B. had the considered judgment to determine for herself to attend and participate. Even if she did not, K.B.'s counsel made her own position abundantly clear that it was important for K.B. to be present to assist with the hearing as it unfolded.

As such, K.B. could be excluded only if she was disruptive to the proceedings or if counsel waived K.B.'s presence in the courtroom. There are no findings concerning the former, and the record clearly demonstrates that K.B.'s counsel vigorously contested K.B.'s exclusion from the courtroom.

We presume prejudice with that exclusion. This was a contested de novo exceptions hearing where the Department was attempting to remove K.B. from Grandmother's custody and where K.B. wished to remain in Grandmother's custody. K.B. was denied both her right to view her own proceedings and to assist counsel in any

appropriate way she could. K.B. is not required to make a showing *how* she would have assisted counsel or *how* her presence could have changed the outcome of the case. *See Safeway Stores, Inc.*, 317 Md. at 184.[16] K.B.'s exclusion from the courtroom, therefore, violated her rights to procedural due process to attend and participate in her own hearing. *See Green*, 366 Md. at 626.[17]

# V
# CONCLUSION

We hold that because the juvenile court has since terminated K.B.'s status as a CINA and returned her to Grandmother's custody, this case is moot. We nevertheless address the merits of this appeal because K.B.'s case presents an issue of public importance for an identifiable group of which she is an appropriate surrogate.

As to the merits, we hold that the circuit court violated K.B.'s rights to procedural due process to attend and participate in her own CINA proceeding when it excluded her without adequately considering her due process rights.

> **JUDGMENT OF THE APPELLATE COURT OF MARYLAND REVERSED. WORCESTER COUNTY DEPARTMENT OF SOCIAL SERVICES TO PAY COSTS IN THIS COURT AND THE APPELLATE COURT OF MARYLAND.**

---

[16] The Department, in arguing that K.B. must show actual prejudice and that she has failed to do so, argues that counsel (1) knew what the evidence at the hearing would entail, (2) could have reviewed that evidence in advance with K.B., (3) could have—but did not—request breaks to consult with K.B., and (4) could have—but did not—call K.B. as a witness. These arguments are unavailing. As we have explained, prejudice comes from the denial of K.B.'s due process rights itself. More is unnecessary.

[17] We recognize that we are articulating a new test here and do not fault the lower courts in any way.